**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| KELVIN BRENT HOLMES, )<br>)<br>Plaintiff, )<br>)<br>vs. )<br>)<br>WEST SIDE VETERANS ADMIN. )<br>V.A. HOSPITAL, )<br>)<br>Defendant. ) | Case No. 04 C 2287 |

## MEMORANDUM OPINION AND ORDER

MATTHEW F. KENNELLY, District Judge:

*Pro se* plaintiff Kelvin Holmes filed suit against the West Side Veterans Administration Hospital under the Federal Tort Claims Act on March 29, 2004, alleging he was mistreated by various hospital and VA personnel on December 2, 2003. Before ordering a response to the complaint, the Court entered an order pointing out that a suit like this one can be brought only against the United States itself, and that before filing suit, the plaintiff must present a claim to the agency (the VA) and receive a denial of the claim. The Court directed Mr. Holmes to advise whether he had completed that process. *See* Order of Apr. 23, 2004.

In response, Mr. Holmes submitted a letter stating that he had, in fact, made a claim to the VA, but that it was still pending. The Court entered an order stating that "the case is premature. The complaint is therefore dismissed, without prejudice to filing a new action if and when the VA denies his administrative claim. If plaintiff refiles the case, he should note on the 'Civil Cover Sheet' that the new case is a refiling of this case." Order of May 5, 2004.

On February 17, 2005, Mr. Holmes filed a motion entitled "Motion to Re-Instate Case."

In the motion, Mr. Holmes stated that the VA had denied his claim, and he attached a copy of the denial letter, which was dated August 20, 2004. Mr. Holmes filed the motion just short of six months after the VA denied his claim, but he did not notice it for presentment before the Court until March 12, 2005, after the six month deadline had passed. The Court did not see Mr. Holmes' motion until just before March 12. The Court eventually granted Mr. Holmes' motion to reinstate his case, though we noted our concern with Mr. Holmes' apparent failure to file a new lawsuit as indicated in the Court's earlier dismissal order.

Following service of summons, the United States moved to dismiss on the ground that Mr. Holmes could not properly "reinstate" his prematurely-filed case. The Court granted the government's motion, saying that

> The Court's May 5, 2004 order clearly and unambiguously advised Mr. Holmes that he would need to file a new lawsuit after the V.A. dealt with his administrative claim. But Mr. Holmes did not follow the Court's instruction, instead seeking to reinstate the dismissed case. The Supreme Court's decision in *McNeil v. United States,* 508 U.S. 106 (1993), makes it clear that the dismissed suit cannot be reinstated. In *McNeil,* the plaintiff, who like Mr. Holmes was a *pro se* litigant, had not exhausted the administrative claim process before filing suit but did so while the suit was pending. The Supreme Court held that this was insufficient, because § 2675(a) unambiguously provides that a suit may not be filed until the administrative claim process has been completed.

Order of Aug. 26, 2005 at 2.

Mr. Holmes appealed, and the Seventh Circuit reversed. In its order deciding the case, the Seventh Circuit acknowledged Mr. Holmes' argument that he had done his best, as a *pro se* litigant, to comply with this Court's directive to refile his case, and that he had tendered a new lawsuit, but that an employee of the Clerk had told him he had to reinstate his former suit rather than filing a new one. The Seventh Circuit stated that "[i]f on remand the district court determines that the intervention of a court employee effectively prevented Holmes from refiling

2

his suit as directed, the court shall order Holmes to supplement his 'motion to reinstate' with the new complaint he tried to file on February 17, 2005, and then allow the suit to proceed." *Holmes v. United States Dep't of Veterans Affairs,* No. 05-3643, unpublished order at 4 (7th Cir. Mar. 24, 2006).

The Court held an evidentiary hearing as directed by the Court of Appeals. Prior to the hearing, Mr. Holmes identified the employees of the Clerk's office with whom he claimed to have dealt. At the hearing, those employees, their supervisor, and Mr. Holmes testified.

Mr. Holmes testified that on February 17, 2005, he appeared at the Clerk's office intending to file a new lawsuit, bringing with him what he described as an "application" for filing a civil case. He testified that he presented this document at the new case filing window to a Clerk's office employee who he identified as Kristin Coppoletta, telling her he wanted to "reopen" his case and that he was unsure what he was supposed to do. He testified that Ms. Coppoletta said he would need to "reinstate" the case and sent him to a different part of the Clerk's office. Mr. Holmes said he presented a copy of this Court's May 5, 2004 order saying he had to file a new suit but that Ms. Coppoletta again told him he would have to reinstate his case. According to Mr. Holmes, another Clerk's office employee, who he identified as Nadine Finley, looked at the Court's order and said he was supposed to file a new case but that Ms. Coppoletta again told him he had to reinstate his former case. Mr. Holmes then went to the counter where Ms. Coppoletta had directed him and presented his documents. He was told to fill out a statement explaining why he wished to reinstate his case. He did so on the spot and presented it for filing; this was the "Motion to Re-Instate Case" described earlier in this ruling. Mr. Holmes presented the motion to an unidentified male Clerk's office employee, who accepted it for filing.

3

Ms. Coppoletta testified that she was not working at the new case filing window on the date in question. She also described her training, testifying that Clerk's office employees are trained that they are not permitted to refuse documents presented for filing. She stated that she had never refused a filing presented to her. If a document appears to be deficient, she accepts it and fills out a "deficiency notice." When shown this Court's May 5, 2004 order, Ms. Coppoletta testified that if shown this order by a litigant, she would understand it as telling the litigant to file a new lawsuit – not to reinstate his former lawsuit. However, she had no memory of Mr. Holmes.

Ms. Finley testified that on the date in question, she was not working in the "intake" part of the Clerk's office but rather was in a different part of the office imaging documents that had been filed. She said, however, that her desk was in the intake section and that it was possible that she had gone to her desk at some point during her work day. She, too, had no memory of Mr. Holmes.

Nelida Finch, the Operations Manager of the Clerk's office, identified a copy of the work assignment schedule for February 17, 2005, which confirmed the testimony of Ms. Coppoletta and Ms. Finley regarding their work assignments for that date.

The Court found credible the testimony of both Ms. Coppoletta and Ms. Finley that they had not worked in the intake or new case areas of the Clerk's office on the date that Mr. Holmes made his filing, the testimony of Ms. Finch regarding the accuracy of the work schedule for that date, and the testimony of Ms. Coppoletta that she did not refuse any filing presented by Mr. Holmes. Mr. Holmes' testimony that he dealt with Ms. Coppoletta and Ms. Finley was not credible; on the date in question, they were not working in the spots where Mr. Holmes placed

them. This does not mean, however, that the Court thinks Mr. Holmes was lying. He was simply mistaken about who he dealt with.

At the hearing, Mr. Holmes testified that he had kept at home the documents that he had brought with him to the Clerk's office on February 17, 2005. At the Court's request, he later brought those documents to Court and offered them into evidence; government counsel did not object.[1] These documents included everything a litigant would need to "refile" a case: a filled-out civil cover sheet, a *pro se* appearance form, a two-page document that amounted to a complaint, a summons, and other related documents. The Court has no basis upon which to disbelieve Mr. Holmes' testimony at the hearing that he had these documents with him when he appeared at the Clerk's office on February 17 and finds that, in fact, he did bring these documents to the Clerk's office.

The Court cannot find, however, that Mr. Holmes actually presented these documents to any employee of the Clerk's office. In this regard, the Court found both credible and persuasive the testimony of Ms. Coppoletta that Clerk's office employees are trained not to refuse documents.

It is noteworthy that Mr. Holmes testified that he had told the Clerk's office employee with whom he dealt that he wanted to "reopen" his case. (This is exactly what Mr. Holmes had earlier stated in the affidavit that he submitted to the Court in opposition to the government's motion for summary judgment following remand.) It is likely that Clerk's office employees

---

[1] In conjunction with the issuance of this decision, the Court is adding to the record the documents Mr. Holmes offered in evidence. The Court has marked separately, as Plaintiff's Exhibit 1, the two-page handwritten complaint, dated February 14, 2005. The remaining documents are marked as Plaintiff's Exhibit 2.

would have understood this as meaning something *other than* "refiling," which is what the Court advised Mr. Holmes that he needed to do. Instead, they would have understood that Mr. Holmes wanted to reinstate his formerly-dismissed case. For this reason, the Court finds that it is more probable than not that whoever Mr. Holmes dealt with on February 17, 2005 – someone other than Ms. Coppoletta or Ms. Finley – understood that he actually wanted to reopen his former case and told him to prepare a motion to reinstate in an effort to help him out, not to hinder him from doing what he wanted to do.

The Seventh Circuit's order remanding Mr. Holmes' case to this Court said that the Court was to determine whether "the intervention of a court employee effectively prevented Holmes from refiling his lawsuit as directed." *Holmes,* No. 05-3643, at 4. As indicated earlier, the Court is unpersuaded that any court employee refused any document that Mr. Holmes presented for filing. Rather, the evidence reflects that Mr. Holmes did not make it clear that he wanted to file an entirely new case, instead telling the Clerk's employee(s) with whom he dealt that he wanted to "reopen" his case. The Clerk's employee(s) understood Mr. Holmes to mean that he wanted to reinstate his dismissed suit, and they assisted him by advising him what he needed to do to do that.

The Court cannot say that this amounted to "prevent[ing] Holmes from refiling his lawsuit as directed." *Id.* Depending on how one reads the Court of Appeals' decision, that might make dismissal of Mr. Holmes' case the appropriate course. On the other hand, it seems rather harsh to rule that a *pro se* litigant forfeited his ability to bring a suit by failing to use the word "refile" rather than the word "reopen." Just one month ago, in a different context, the Seventh Circuit alluded to the inadvisability of elevating form over substance, even when

6

dealing with litigants represented by counsel. *See Farzana K. v. Ind. Dep't of Educ.,* ___ F.3d ___, 2007 WL 16217, *3 (7th Cir. Jan. 4, 2007). That concept seems particularly appropriate in this case. The Court finds, based on the evidence presented, that Mr. Holmes intended to comply with the Court's directive to *refile* his lawsuit. Due, however, to his lack of experience, Mr. Holmes did not properly communicate his intention to the Clerk's office. As a result, he did not comply with the letter of this Court's directive. On the other hand, Mr. Holmes quite clearly complied with the spirit of the Court's order – he presented a document (namely his motion to reinstate) that made it clear that he wanted to proceed with his case.

There is a legitimate question whether, consistent with the Court of Appeals' order, this Court can appropriately permit Mr. Holmes' case to proceed absent proof (which is lacking, as noted earlier) that a court employee affirmatively prevented him from filing a new suit. It does not appear that Mr. Holmes made a "substantial compliance" argument in his appeal to the Seventh Circuit. The law is clear that issues that could have been raised on appeal but were not are beyond the scope of the appellate court's remand of the case to the district court and thus are not open for consideration on remand. *See, e.g., United States v. Husband,* 312 F.3d 247, 250 (7th Cir. 2002). On the other hand, the Court is inclined to give a liberal interpretation to the Seventh Circuit's reference to "intervention" by court employees. Court employees did, in fact, "intervene" with Mr. Holmes, in an appropriate manner based on what he told them he wanted to do. As a result, without any fault or misconduct by a court employee, Mr. Holmes ended up filing a "motion to reinstate" rather than a new lawsuit.

*McNeil v. United States,* 508 U.S. 106 (1993), cited by this Court in dismissing Mr. Holmes' case before as well as by the Seventh Circuit on appeal, made it clear that a Federal

Tort Claims Act suit instituted before the plaintiff exhausts administrative remedies is premature. The government's consistent position has been that this makes it inappropriate to permit "reinstatement" of a FTCA suit dismissed as premature. But in *McNeil,* the Supreme Court specifically stated that it was not considering whether a document later filed in a FTCA case dismissed as premature may properly be construed as instituting a new action. *See id.* at 110 n.5 & 113 n.9.

As a general rule, it is preferable to decide cases on the merits rather than on what are arguably technicalities. The Court believes that the appropriate course, in light of Mr. Holmes' *pro se* status, and his good faith attempt to comply with the Court's directive, is to deem Mr. Holmes' "motion to reinstate," together with the handwritten complaint that he brought with him to the Clerk's office on February 17, 2005, to constitute the filing of a fresh suit following the denial of his administrative claim.

The Court acknowledges that a reasonable argument may be made that this decision goes beyond the appropriate scope of the Seventh Circuit's remand order and/or that it decides a debatable legal question the wrong way. For that reason, the Court is, if requested, willing to certify its decision for interlocutory appeal under 28 U.S.C. § 1292(b) as a controlling question of law as to which there is substantial grounds for difference of opinion, and whose determination on an immediate appeal may significantly advance the ultimate termination of the litigation.

**Conclusion**

The Court denies the government's request to dismiss Mr. Holmes' case for the reasons stated above. Mr. Holmes' motion to reinstate, together with the document included in the

record as Plaintiff's Exhibit 1, is deemed to constitute the filing of a fresh suit on February 17, 2005. The case is set for a status hearing on February 21, 2007 at 9:30 a.m., so that the government may advise the Court whether it wishes to request an interlocutory appeal. Both government counsel and Mr. Holmes are directed to appear at that date and time.

_____
MATTHEW F. KENNELLY
United States District Judge

Date: February 2, 2007